**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ASH GROVE TEXAS, L.P.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:08-CV-2114-O** |
| | § | |
| **CITY OF DALLAS, CITY OF FORT** | § | |
| **WORTH, CITY OF ARLINGTON** | § | |
| **DALLAS COUNTY SCHOOLS,** | § | |
| **AND TARRANT COUNTY, TEXAS,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER AND MEMORANDUM OPINION**

Pending before the Court are four dispositive motions and an alternative motion for more definite statement, together with supporting briefs and appendices. Plaintiff has responded to each. Summarily these are:

1) Defendant Tarrant County's Motion to Dismiss (Doc. #13), Brief in Support (Doc. # 14), Appendix in Support (Doc. # 15), Tarrant County's Reply Brief (Doc. # 33), Ash Grove Texas, L.P.'s ("Ash Grove") Brief in Opposition to Tarrant County's Motion to Dismiss (Doc. # 23); and, Ash Grove's Appendix in Support of its Brief in Opposition (Doc. # 24);

2) Defendant Dallas County Schools' ("DCS") Motion to Dismiss (Doc. # 17), DCS' Brief in Support (Doc. # 21), Ash Grove's Response (Doc. # 34), and DCS' Reply (Doc. # 35);

1

3)    Defendant City of Dallas' ("Dallas") Motion to Dismiss (Doc. # 26), Dallas' Brief in Support (Doc. # 27), Ash Grove's Response (Doc. # 36), and Dallas' Reply (Doc. # 46);

4)    Defendant City of Arlington's ("Arlington") Motion to Dismiss and in the Alternative [Federal Rule of Civil Procedure] 12(e) Motion for More Definite Statement (Doc. # 30), Arlington's Brief in Support (Doc. # 31), Arlington's Amended Brief/Memorandum in Support (Doc. # 32),[1] Ash Grove's Response (Doc. # 36), and Arlington's Reply Brief (Doc. # 45).[2]

For reasons discussed below, the Motions to Dismiss are **GRANTED** in part and **DENIED** in part. Arlington's Motion for More Definite Statement is **DENIED**.

## I.    <u>FACTUAL BACKGROUND</u>

### A.    <u>HISTORY OF THE DISPUTE</u>

Based on the undisputed facts presented, the Court considers the following for purposes of these motions. Defendants are governmental entities that passed various versions of official resolutions expressing their preferences that any future purchases of cement for construction projects within their jurisdiction be from cement manufacturers who make cement using a dry kiln process. The motivating factor behind the Defendants' resolutions was the desire to reduce emissions produced by manufacturing cement using a wet kiln process. *See generally* Doc. # 1, Plaintiff's Original Complaint (hereafter "Compl.").

---

[1] Arlington's Amended Brief (Doc. # 32) is the "live" version for purposes of this Order and Opinion, in disregard of that filed initially (*see* Doc. # 31).
[2] The City of Fort Worth answered on January 21, 2009 and does not have a motion to dismiss pending. *See* Doc. # 25.

Ash Grove operates a cement manufacturing plant in Midlothian, Texas. Compl. ¶3. Cement is made by using either a wet process kiln or a dry process kiln. *Id.* The difference between the wet and dry process depends on whether the raw materials introduced into the tube (the kiln) at the beginning of the cement manufacturing process is wet or dry materials. *Id.*, n. 2. If those materials are introduced in a wet slurry form, it is manufactured using the wet process. If those materials are relatively dry, it is manufactured using the dry process. *Id.* Ash Grove manufactures cement at its Midlothian facility using a wet process kiln. *Id.* Ash Grove supplies its cement to its customers who re-sell it to contractors that bid for contracts with Defendants, among others. *Id.*

Ash Grove's wet kilns are the only ones in the United States that use selective non-catalytic reduction technology to reduce Nitrogen oxide ("NOx"). *Id.* ¶18. It installed this technology at considerable expense to reduce NOx emissions. *Id.* Its efforts to reduce emissions have resulted in substantial reductions of pollutants. *Id.* at 19.

States are required to comply with National Ambient Air Quality Standards (NAAQS). *Id.* ¶21. States submit a State Implementation Plan (SIP) to the Environmental Protection Agency (EPA) explaining how they will attain NAAQS. *Id.* Counties in North Texas, including Dallas and Tarrant, are designated nonattainment for NAAQS. *Id.* The SIPS are developed by the Texas Commission on Environmental Quality (TCEQ). *Id.* TCEQ issued rules requiring each kiln operator to maintain its NOx emissions at or below its NOx emissions cap on a 30-day rolling average during ozone season. *Id.* ¶22.

The City of Dallas debated passing a resolution specifying use of dry kiln manufactured cement on city projects to meet NAAQS. After considering the issue, it passed a resolution (the Dallas Resolution) which provides in part: "[t]he City manager is hereby authorized to specify the purchase of dry kiln cement as the base bid in City of Dallas bid packages, with an alternative bid for the purchase of cement from a [sic] unspecified source and preferential purchasing for bids from a cement kiln with emission rates of 1.7 pounds of NOx per ton of clinker or less." *Id.* ¶38. Plaintiff alleges Dallas has solicited bids for projects adhering to the Dallas Resolution by calling for dry kiln cement. *Id.* ¶39-44.

The City of Fort Worth debated and passed a similar resolution (the Fort Worth Resolution). Its resolution reads: "[t]he City Manager is hereby authorized to specify the purchase of dry kiln cement as the base bid in City of Fort Worth bid packages, with an alternative bid for the purchase of cement from an unspecified source and preferential purchasing for bids from a cement kiln with emission rates of 1.7 pounds of NOx per ton of clinker or less." *Id.* ¶46. After passage, Fort Worth's Director of the Environmental Management Department wrote Ash Grove informing it that if it began a set of changes, it would change the Fort Worth Resolution and present a modified version to the city council for reconsideration. *Id.* ¶51. Ash Grove complied with these instructions but the resolution has not been submitted for modification. *Id.* ¶52. Fort Worth has requested bids incorporating the Fort Worth Resolution. *Id.* ¶53.

The City of Arlington also passed a similar resolution (the Arlington Resolution). It reads in part: "[t]he City Manager or his designee is hereby authorized,

where allowed by law, to give preferential bid evaluation of all cement produced by kilns with emission rates of 1.7 pounds of nitrogen oxide (NOx) per ton of clinker or less in City of Arlington bid packages." *Id.* ¶62. Arlington has requested bids using the standard set out in the Arlington's Resolution. *Id.* ¶63.

The City of Plano also passed a resolution (the Plano Resolution). It reads in part: "[t]he City manager or his designee is hereby authorized, where allowed by law, to provide for the purchase of dry kiln cement as the base bid, with an alternative bid for the purchase of cement from an unspecified source and to give preferential bid evaluation of all cement produced by kilns with emission rates of 1.7 pounds of nitrogen oxide (NOx) per ton of clinker or less in City of Plano bid packages. Preference may only be given if the cost for the goods or services would not exceed 105% of the goods or services provided by a vendor who does not meet the standards." *Id.* ¶64. [3]

Dallas County Schools adopted a comparable resolution (the DCS Resolution). It reads in part: "[t]he Superintendent is hereby authorized to specify the purchase of dry kiln cement as the base bid in Dallas County Schools bid packages, with an alternative bid for the purchase of cement from an unspecified source and preferential purchasing for bids from a cement kiln with emission rates of 1.7 pounds of NOx per ton of clinker or less." *Id.* ¶65.

Finally, Tarrant County adopted a resolution (the Tarrant County Resolution) which reads: "The Tarrant County Commissioners Court, do hereby authorize the County Purchasing Agent to specify the purchase of dry kiln cement as the base bid

---

[3] The City of Plano was dismissed from the lawsuit by a Plaintiff's Notice of Dismissal filed on December 2, 2008.

in Tarrant County bid packages, with an alternative bid for the purchase of cement from an unspecified source and preferential purchasing for bids from a cement kiln with emission rates of 1.7 pounds of NOx per ton of clinker or less." *Id.* ¶66.

Ash Grove sells most of its cement to suppliers who resell it to contractors who bid on projects, including Defendants' projects. Compl. ¶ 68. One of Ash Grove's suppliers informed Ash Grove that it can no longer buy as much cement from it because of the Resolutions. *Id.* ¶68.

B.     PLAINTIFF'S CLAIMS

Ash Grove brings three claims: (1) a claim under the Declaratory Judgment Act; (2) a claim under 42 U.S.C. 1983 ("Section 1983"); and (3) a claim for injunctive relief. Pl. Resp. to T. Cty. Mot., p. 1. First, Plaintiff seeks a Declaratory Judgment under 28 U.S.C. §§ 2201 and 2202 that the resolutions: (1) violate the Texas competitive bidding statutes, *Id.* ¶¶ 69-73; (2) violate the Texas Preferred Purchasing statute, *Id.* ¶69, ¶¶ 74-76; (3) are preempted by state regulations, *Id.* ¶69, ¶¶ 77-86; (4) are arbitrary and capricious, *Id.* ¶69, ¶¶ 87-89; (5) are unconstitutionally vague, *Id.*¶69, ¶¶ 90-93; (6) are unconstitutional regulatory takings, *Id.* ¶69, ¶¶ 94-96; and, (7) violate the equal protection clause, *Id.* ¶69, ¶¶ 97-100. Second, under 42 U.S.C. § 1983, Plaintiff also seeks monetary, declaratory and injunctive relief for the violation of its constitutional rights. *Id.* ¶¶ 101-102.

Finally, Plaintiff asks for extensive injunctive relief under 28 U.S.C. §§ 2201, 2202. *Id.* at ¶¶ 101-102. With the exception of the City of Fort Worth,[4] Defendants have not answered, having filed these several motions requesting dismissal, and the

---

[4] *See* Doc. 25.

matter of temporary injunctive relief is not before the Court at this time. Plaintiff sought and received a hearing date with respect to Fort Worth, but the hearing was cancelled on Plaintiff's request after it notified the Court a working agreement with Fort Worth had been reached. *See* Docs. ## 47-49. Therefore, injunctive relief is not before the Court at this time.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

#### 1. *General standards*

Federal courts have limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). They lack the power to adjudicate claims falling outside the jurisdiction conferred by the Constitution or federal statute. *Id.* The "burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.,* 243 F.3d 912, 916 (5th Cir. 2001).

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A motion to dismiss for lack of subject-matter jurisdiction asserts that a claimant cannot conceivably establish that its case falls within that granted authority. *See generally, United States v. Morton,* 467 U.S. 822 (1984).

Article III, section 2, of the Constitution limits federal court jurisdiction to actual "cases and controversies." *United States v. Ferreiro,* 297 Fed. Appx. 331, 332 (5th Cir. 2008); *Spencer v. Kemna,* 523 U.S. 1, 7 (1998). A case is properly dismissed under Federal Rule 12(b)(1) when the Court lacks the statutory or constitutional power to hear the case. *See FED. R. CIV. P. 12(b)(1)*; *Home Builders Ass'n of Miss., Inc. v.*

*City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998). A party seeking to invoke the jurisdiction of a federal court must prove that jurisdiction is proper. *Boudreau v. United States,* 53 F.3d 81, 82 (5th Cir. 1995).

Dismissal is warranted if the allegations in a plaintiff's complaint, taken as true, together with any undisputed facts, or disputed facts resolved by the court, establish that the district court lacks jurisdiction. *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992); *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). In addition to resolving issues raised by parties, courts are required to police their own exercise of jurisdiction *sua sponte. Ferreiro,* 297 Fed. Appx. at 332; *Mosley v. Cozby,* 813 F.2d 659, 660 (5th Cir. 1987).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) (per curiam); *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994). If subject-matter jurisdiction is lacking, the federal court lacks the ability to adjudicate the claim before it, and must dismiss it. *Id. ; see also Stockman v. Federal Election Comm'n,* 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).

In the present matter, Defendants' motions challenge this Court's subject-matter jurisdiction based on the sufficiency of the pleading's allegations, and are therefore facial attacks. *U.S. v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). A "facial attack" requires the court to merely decide whether the allegations in the complaint, which are presumed to be true, sufficiently state a basis for subject-matter jurisdic-

tion. *See Paterson v. Weinberger,* 644 F. 2d 521, 523 (5th Cir. 1998). "If sufficient,

those allegations alone provide jurisdiction." *Id.*

The appendices involved in the exchange between Tarrant County and Plain-

tiff supplement the factual pleadings rather than raising disputed fact issues. *See*

*Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001); *Williamson*, 645 F.2d at

412-13.  No appendices have been filed by other parties. Consequently, the parties

present the Court with a facial attack on the pleadings as supplemented by undis-

puted facts.

### 2.    *Standing*

Article III jurisdiction requires standing to resolve a dispute. *See* Fed. R. Civ.

P. 12(b)(1); *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998); *Allen v.*

*Wright,* 468 U.S. 737 (1984).  Unless a plaintiff has standing to pursue his claims, the

claims must be dismissed for lack of subject matter jurisdiction. *See  Id. ; see also,*

*Home Builders Assoc., Inc.,* 143 F.3d at 1010. Plaintiff bears the burden of proving

standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To establish stand-

ing, Plaintiff must establish three elements:[5] "(1) an 'injury in fact' that is (a) con-

crete and particularized and (b) actual or imminent; (2) a causal connection be-

tween the injury and the conduct complained of; and (3) the likelihood that a favor-

able decision will redress the injury." *Croft v. Governor of Texas,* 562 F.3d 735, 750

(5th Cir. 2009).

---

[5] These factors are famously referred to as "the irreducible constitutional minimum" for
standing under Article III. *See e.g., Lujan,* 504 U.S. at 560; *Little v. KPMG LLP,* 575 F.3d 533,
540 ( 5th Cir. 2009).

Districts courts are directed to construe allegations of injury liberally enough that on a motion to dismiss they must presume "that general allegations embrace those specific facts that are necessary to support the claim [of standing]." *Lujan v. Nat'l Wildlife Fed.,* 497 U.S. at 889. However, the standing must be pled so as to establish that the alleged injury is actual, specific, and contemporaneous with the present action, and that standing exists at the time of the alleged injury. *See, eg., Feder v. Elec. Data Sys. Corp.,* 248 Fed. Appx. 579 (5th Cir. 2007).

Conjectural or hypothetical allegations do not suffice to confer standing. *See DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 344-46, 350 (2006); *Little v. KPMG LLP,* 575 F.3d 533, 539. For example, if the injury's existence depends on actions or decisions by third parties not before the court, the claimed injury is usually too conjectural or hypothetical to confer standing. *Id. ; see, e.g., Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 41 (1976). Whether the claimed injury is concrete and non-speculative presents a legal question. *Id.*

### 3.   *Sovereign Immunity*

Under Texas law, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits against certain State governmental units unless the State consents to suit. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 224, (Tex. 2004); *Texas Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999). This principle is long-standing. *See, e.g., Hosner v. De Young,* 1 Tex. 764, 769 (1847). While immunity from liability protects the governmental defendant from damages, immunity from suit prevents lawsuits against that defendant all together. *Jones,* 8 S.W.3d at 638.

### B.    <u>RULE 12(b)(6)</u>

A motion under Rule 12(b)(6) allows the movant to raise its rights under the requirement that their adversary's pleading "must contain a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The issue is whether Plaintiff has pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

A claim has facial plausibility when the plaintiff pleads factual content that allows courts to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). A court may not accept strained inferences, conclusory allegations, unwarranted deductions or legal conclusions. *R2 Invs. LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). However, courts assume that well-pleaded allegations are true and then determines whether they establish a plausible claim to relief. *Id.* A court cannot look beyond the pleadings when resolving a Rule 12(b)(6) controversy. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999). Pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498-99 (5th Cir. 2000).[6]

Traditionally, however, a motion to dismiss for failure to state a claim "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir. 1997). *See, e.g., Lormand v. US Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009); *A2D Techs., Inc. v. MJ Sys.,* 269 Fed. Appx. 537, 541 (5th Cir. 2008);

---

[6] Plaintiff attached twenty-eight exhibits to its original pleadings. *See* Doc. #1, Attachments ## 1-28. Tarrant County attached an Appendix in Support of its Motion to Dismiss; Plaintiff responded and attached an Appendix as well. *See,* Doc. # 15; Doc. # 24. The Court has reviewed these and taken into account those that meet the standard stated above.

*Mitchell v. Crescent River Port Pilots Ass'n,* 265 Fed. Appx. 363, 371 (5th Cir. 2008);

*Clontz v. Life Ins. Co. of N. Am.,* NO. 3:08-CV-1947-B, 2009 U.S. Dist. LEXIS 44797, *2

(N.D. Tex. May 28, 2009); *Patel v. Pac. Life Ins. Co.,* NO. 3:08-CV-0249-B, 2009 U.S.

Dist. LEXIS 44105, *21 (N.D. Tex. May 22, 2009); *Lincoln Gen. Ins. Co. v. US Auto Ins.

Servs.,* NO. 3:07-CV-1985-B, 2009 U.S. Dist. LEXIS 36411, *11 (N.D. Tex. Apr. 29,

2009); *SEC v. Reynolds,* NO. 3-08-CV-0438-B, 2009 U.S. Dist. LEXIS 33341, *11 (N.D.

Tex. Apr. 17, 2009). Courts may not evaluate the plaintiff's likelihood of success; in-

stead, they only determine whether the plaintiff has a legally cognizable claim. *Unit-

ed States ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 376 (5th Cir. 2004).

### C.   **Rule 12(b)(7)**

Rule 19(a) governs whether a person is a necessary party to a federal law-

suit. Fed. R. Civ. P. 19(a).[7]   The purpose of the rule is to avoid multiple lawsuits and

make certain that the parties in a lawsuit may obtain complete relief. *Evergreen Park

Nursing & Convalescent Home, Inc. v. Am. Equitable Assur. Co.,* 417 F.2d 1113 (7th Cir.

1969). A person who is subject to service of process and whose joinder will not de-

prive the court of subject-matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief
>     among existing parties; or
> (B) that person claims an interest relating to the subject of the action
>     and is so situated that disposing of the action in the person's ab-
>     sence may:
>     (i) as a practical matter impair or impede the person's ability
>         to protect the interest; or
>     (ii) leave an existing party subject to a substantial risk of incur-
>          ring double, multiple, or otherwise inconsistent obliga-
>          tions because of the interest.

---

[7] The terms "necessary party," "required party" and "indispensible party" are interchangea-
ble. *See* 4-19 Moore's Federal Practice - Civil § 19.05[1][a].

FED. R. CIV. P. 19(a)(1); *see also Odom v Posey*, NO: 09-3532 SECTION: "S" (4), 2009 U.S. Dist. LEXIS 70129, *8-9 (E.D. La. July 27, 2009).  If diversity jurisdiction cannot absorb the party in question, then the case must be dismissed. *August v. Boyd Gaming Corp.,* 135 Fed. Appx. 731, 733 (5th Cir. 2005).  If a court would retain jurisdiction with that party in the case before it, the Fifth Circuit then requires a "two-step inquiry."  *Id.; see also, Buck Kriehs Co. v. Ace Fire Underwriters Ins. Co.,* No. 04-867 SECTION "K"(5), 2004 U.S. Dist. LEXIS 12442, *12 (E.D. La. June 29, 2004). A court must first "determine whether a party should be added under the requirements of" Rule 19. *Id.* Next, it must "determine whether litigation can be properly pursued without the absent party under" Rule 19. *August,* 135 Fed. Appx. at 733 *(citation omitted).*

    If a required party cannot be joined, a court must consider whether the action should proceed among the existing parties or be dismissed as a matter of equity. FED. R. CIV. P. 19(b); FED R. CIV. P. 12(b)(7); *Republic of the Philippines v. Pimentel,* 128 S. Ct. 2180, 2188  (2008); *HS Res., Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003); *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986). The case must be dismissed if a Rule 19 analysis dictates that the lawsuit cannot equitably proceed without that party. *August,* 135 Fed. Appx. at 733; *see also Kellogg Brown & Root Servs. v. Alanmia Commer. Mktg. Co. W.L.L.,* NO. H-07-2684, 2007 U.S. Dist. LEXIS 86285, **11-12 (S.D. Tex. Nov. 21, 2007); *Buck Kriehs,* 2004 U.S. Dist. LEXIS 12442, at *13.

    The party seeking to join a nonparty under Rule 19 has the burden of proof to demonstrate that the nonparty is needed for a just adjudication. *Amer. Gen. Life*

*and Accident Ins. Co. v. Wood,* 429 F.3d 83, 92 (4th Cir. 2005). Rule 19 requires a

pragmatic, detailed and fact-based analysis. *Pulitzer-Polster,* 784 F.2d at 1309; *see*

*also Republic of the Philippines,* 128 S. Ct. at 2188 ("[T]he issue of joinder can be

complex, and the determinations are case-specific."). "The focus is on relief between

the parties and not on the speculative possibility of further litigation between a par-

ty and an absent person." *LLC Corp. v. Pension Benefit Guar. Corp.,* 703 F.2d 301, 305

(8th Cir. 1983).

### D.   Rule 12(e)

When a party moves for a more definite statement, a court must determine

whether the complaint is such that a party cannot reasonably be required to frame a

responsive pleading. *Mitchell v. E-Z Way Towers, Inc.,* 269 F.2d at 130; s*ee also Trav-*

*elers Indem. Co. of Conn. v. Presbyterian Healthcare Res.,* 313 F. Supp. 2d 648, 653-54

(N.D. Tex. 2004) (Counterclaims are examined under the same standard). The issue

is "whether the complaint is so vague that the moving party cannot reasonably be

required to frame a responsive pleading."  *Id.; see also Chapman v. Dallas County Cm-*

*ty. Coll. Dist.,* No. 3:05-CV-1809-G, 2006 WL 3442057, at *4 (N.D. Tex. Nov. 29, 2006).

Courts have significant discretion in considering a motion for more definite state-

ment. *Mitchell,* 269 F.2d at 132; *Chapman,* 2006 WL 3442057, at *4; *Russell v. Grace*

*Presbyterian Vill.,* No. 3:05-CV-0030-P, 2005 WL 1489579, at *3 (N.D. Tex. June 22,

2005). "[M]otions for a more definite statement are generally disfavored." *Russell,*

2005 WL 1489579, at *3  (citing 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL

PRACTICE AND PROCEDURE § 1377 (2d ed. 1990); *see also Larsen-Anstine v. Shell Oil Co.,*

No. 3:07-CV-290-M, 2007 U.S. Dist. LEXIS 52571, at *4-5 (N.D. Tex. July 19, 2007)

A more definite pleading will only be required if the live pleading "fails to (1) provide notice of circumstances which give rise to the claim, or (2) set forth suffi-cient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Beanal v. Freeport-McMoran, Inc.,* 197 F.3d 161, 164 (5th Cir. 1999). The motion for more definite statement must likewise state the defects in the pleading and the details desired. Fed. R. Civ. P. 12(e). *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002). Rule 12(e) motions are improperly granted if the movant can respond effectively and then obtain the desired details through discov-ery. *Mitchell*, 269 F.2d at 132; *Arista Records LLC v. Greubel,* 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006).

## III.   ANALYSIS

### A.   Plaintiff's Claims

#### 1.   *Section 1983*

Section 1983 creates a cause of action for a plaintiff to enforce federal rights created by the United States Constitution or by other federal statutes. 42 U.S.C. § 1983; *see Albright v. Oliver,* 510 U.S. 266, 271 (1994). However, section 1983 does not create or establish a right in and of itself. Section 1983 provides a private right of action against parties acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" to redress the deprivation of rights secured by the United States Constitution or federal law. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 117 (1988). Therefore, the Plaintiff must demonstrate: (1) a violation of the United States Constitution or of federal law; and (2) that the violation was committed by someone acting under color of state law.  *Id.*

Municipalities cannot be held liable under 42 U.S.C. § 1983 under respondeat superior. *Bd. of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 415-16 (1997). Instead, plaintiffs may state a claim of municipal liability under section 1983 based on three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. See *Hampton Co. Nat'l Sur., LLC v. Tunica County,* 543 F.3d 221, 227 (5th Cir. 2008); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 694 (1978);  *Gomez v. Toledo,* 446 U.S. 635, 640 (1980) (citing *Monroe v. Pape,* 365 U.S. 167, 171 (1961)).

In the instant case, the section 1983 issues raised in Defendants' motions center on standing or whether Plaintiff has sufficiently alleged facts demonstrating a violation of its constitutional rights.

2.      *The Declaratory Judgment Act*

As noted, Plaintiff seeks a set of declaratory judgments. The Declaratory Judgment Act provides that in a case of actual controversy "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 220(a). [8] "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.*

_____

[8] The exceptions to the Declaratory Judgment Act are "controversies involving" Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930) ...." *Id.* "For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act." *Id.*

16

The case and controversy must be real, substantial, and susceptible to conclusive relief within the powers of a court. *Vantage Trailers, Inc. v. Beall Corp.,* 567 F.3d 745, 748 (5th Cir. 2009) (citing *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, (2007)). Declaratory judgments cannot be used to gain "sneak peeks" at results under hypothetical sets of facts. *Id.* "[I]t is well settled that this section does not confer subject matter jurisdiction on a federal court where none otherwise exists." *Lawson v. Callahan,* 111 F.3d 403, 405 (5th Cir.  1997). However, plaintiffs "need not actually expose themselves to liability before bringing suit." *Id.*

> *3. Injunctive relief*

Plaintiff also seeks several forms of relief by way of injunction but that issue is not before the Court at this time. *See* Fed. R. Civ. P. 65, *see also, supra*. p. 6-7.

In addition to motions to dismiss for lack of subject matter jurisdiction and failure to state a claim, the City of Dallas challenges Plaintiff's right to seek to invalidate concrete contracts awarded to third parties not before this Court under Rule 12(b)(7).  The Court turns first to the pre-eminent issues rising under Rule 12(b)(1).

**B.**      **Rule 12(b)(1): Subject Matter Jurisdiction**

> *1.      Justiciability & ripeness*

All four movants highlight the defensive issues of ripeness, standing, justiciability, and actual-case-in-controversy. In this case, these matters appear to be practically inseparable upon review of the facts in this case and the applicable case law. All four respondents rely on the purported legality of the enactments and their uncertain application in the future to say that there is no injury to be redressed by a

favorable decision. *See* Doc. # 14 at 11-14; Doc. #21 at 4-12; Doc. #27 at 11-19; Doc. #32 at 11-15.

Based in Article III, the ripeness doctrine is drawn from "prudential reasons for refusing to exercise jurisdiction." *Roark & Hardee, LP, v. City of Austin,* 522 F.3d 533, 544 (5th Cir. 2008) (*quoting Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n. 18 (1993)). Article III requires an actual case and controversy, and prudence finds jurisdiction only when necessary. While it is prudent to decline review of a legal controversy that may never ripen into conflict, it is not necessarily prudent to decline review of a controversy where the battle lines are already drawn and the clash is certain. In the latter case, the controversy is neither abstract nor theoretical. *See Roark & Hardee*, 522 F.3d at 545. The Court must then consider "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.  (quoting Monk v. Huston,* 503 F.3d 279, 282 (5th Cir. 2003), *citing Abbott Labs,* 387 U.S. 136, 149 (1967)).

Defendants argue that these resolutions are purely "aspirational," *see,* Doc. # 21 (DCS' Brief in Support) at 12, 23; Doc. # 33 (Tarrant County's Brief in Reply) at 2, and they contend that final legislative action has not taken place. Doc. # 14 at 10-16; Doc. # 21 at 12, 23; Doc. # 32 at 9, 11, 13-14, 22, 27; Doc. # 33 at 3.[9] However, the

---

[9] The argument is compactly stated by DCS: "Finally, the Resolution only authorizes the superintendent to make such specifications, it does not mandate; nor does Plaintiff allege facts that the DCS Superintendent has actually issued such specifications. Plaintiff's Complaint and the mere existence of a Resolution that authorizes an act that has yet to occur is [Sic.] not enough to enable Plaintiff to sue DCS." Doc. # 21 at 12. Likewise, Arlington contends that: "(1) Arlington's Resolution - the sole alleged wrongful act of Arlington - does not have the effect of a final governmental action and does not prescribe, proscribe, or penalize any activity; (2) Plaintiff has no legal property right to any prospective contract with Arlington; and (3) even if the Resolution had the force of law, such a law is expressly permissible pur-

undisputed facts show that a vote was taken on the resolutions and they have been put on the books. Additionally, Plaintiff has well pled that Dallas, DCS, Fort Worth, Arlington and Tarrant County, are treating the resolutions as governing instruments. Compl. ¶¶ 39-43, 51 - 54, 63, 65.

Tarrant County sent a letter to Ash Grove warning, ""A new bid will be processed prior to that date in order to include the resolution requirement for Tarrant County to purchase product processed via a dry kiln." Doc. # 15 at 14.[10] Plaintiff has also pled that Fort Worth has told Ash Grove it will use its resolution, has used it to force Ash Grove to change its business practice, Compl. ¶¶ 51-54, 59, and several Defendants instructed their personnel to report back on the affect of the implementation of the resolution. Compl. ¶¶ 38, 46, 65.[11] Further, Plaintiff has pled lost business opportunities as a direct result of the resolutions. Compl. ¶ 68. The Court concludes Plaintiff has constitutional standing to bring this suit.

In addition, Defendants' collectively argue that these resolutions are simply authorizations to act, not actions in themselves. The same can be said for any ordi-

---

suant to the applicable Texas statutory framework, including the preferential purchasing statute." Doc. 32 at 9. Note that the issue of final legislative action should not be confused with the issue of finality as it relates to Plaintiff's taking claim.

[10] Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins*, 224 F.3d at 498-99 (5th Cir. 2000).

[11] Plaintiff alleges that "subsequent to adopting the Dallas Resolution, the City of Dallas submitted various solicitations for bids seeking base bids utilizing cement manufactured from only dry kilns. As a result, Ash Grove's cement has been excluded from the City of Dallas's competitive bid process. In the year since the Dallas Resolution became effective, Ash Grove has demonstrated to the City of Dallas why the Dallas Resolution is unfair and unworkable. The City of Dallas has refused to budge, however, despite that the vice chair of the city's Transportation and Environment Committee recently admitted to Ash Grove that the net effect of the Dallas Resolution was to drive up prices because it created a monopoly. Further, one Councilmember, Dr. Garcia, recently recognized that the Dallas Resolution is not fair to Ash Grove in light of Ash Grove's emission rates compared to other wet and dry kilns." Compl. Para 45.

nary piece of legislation that authorizes agents of the government to take certain actions or direct them to be restrained in particular ways. An ordinance that authorizes officers to fine bars that permit smoking is "mere authorization" but has immediate impact and is final legislative action. *See, e.g., Roark & Hardee*, 522 F.3d at 545.

Plaintiff has well pled that the enactments are indistinguishable in operation from ordinances. *See, e.g.,* Compl. at ¶¶ 34-43, 51-54, 63, 65. A Rule 12(b)(1) reading of the pleadings here requires the Court to assume that, as stated above, Defendants are actively using the resolutions. In addition, the Court finds that the hardship of waiting until each of the Defendants have a chance to deny Plaintiff a contract based on their enactments is manifest.

Defendants' arguments here reveal a more subtle flaw in that Defendants each misidentify the subject of complaint. Plaintiff attacks the enactments themselves, not each one of any future decisions that might be made under them. In particular, Plaintiff contends in its briefing these enactments affect its substantive due process constitutional right to pursue one's chosen lawful occupation and economic damages are recoverable.[12] *See* Doc. # 23 at 13-20; *see also, Tex. Cable & Telcoms. Ass'n v. Hudson,* 265 Fed. Appx. 210, 212-219 (5th Cir. 2008), *cert den.* 129 S.Ct. 146 (2008); *Stidham v. Tex. Comm'n on Private Sec.,* 418 F.3d 486, 491-492 (5th Cir. 2005); *see* Compl. at 93, 101-102.[13] The purpose of the enactments appears to be

---

[12] As examined below, however, this right alone does not confer protected status on a business for purposes of the Equal Protection Clause.

[13] "The Supreme Court has said that 'the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure.' *Truax v. Raich,* 239 U.S. 33,

forcing wet kilns to either re-engineer their plant or face relative marginalization in this niche market – and possibly complete elimination from the market. [14]

Plaintiff has alleged an actual injury in the loss of business and an ongoing imminent injury in its inability to compete on an equal playing field in its market. *See Croft,* 562 F.3d at 745(citing *Lujan*, 504 U.S. at 560-61); *see also Tex. Cable,* 265 Fed. Appx. at 212-219. Plaintiff has alleged a causal connection between the injury and the Defendants' enactments. *Id.* Plaintiff has alleged a significant "likelihood that a favorable decision will redress the injury." *Croft,* 562 F.3d at 745 (citing *Lujan*, 504 U.S. at 560-61).

The Court finds that the facts presented in Plaintiff's complaint are fit for review at this time. *See, Roark & Hardee,* 522 F.3d at 552. Plaintiff has pled a violation of its constitutional rights, and alleged facts supporting a claim that Defendants deprived it of a clearly identified liberty without due process of law. Compl. ¶¶ 27-68, 101-102; Doc. #23 at 13-20; *see also, Stidham,* 418 F.3d at 492. Accordingly, Plaintiff has established justiciability with respect to those claims that otherwise survive this Order.

---

41, (1915). We have confirmed the principle that one has a constitutionally protected liberty interest in pursuing a chosen occupation. *See Ferrell v. Dallas Independent School District,* 392 F.2d 697, 703 ( 5th Cir. 1968) (noting that the right of professional musicians to follow their chosen occupation free from unreasonable governmental interference comes within the liberty concept of the Fifth Amendment); *Shaw v. Hospital Authority,* 507 F.2d 625, 628 ( 5th Cir. 1975) (holding that a podiatrist's application for staff privileges at a public hospital for purposes of engaging in his occupation as a podiatrist involved a liberty interest protected by the Fourteenth Amendment); *San Jacinto Sav. & Loan v. Kacal,* 928 F.2d 627, 704 ( 5th Cir. 1991) (finding that the owner of an arcade had a protectible liberty interest in operating her business)." *Stidham,* 418 F.3d at 491.

[14] Plaintiff has claimed it is one of only three major competitors in its market. Compl. ¶28.

The Court now turns to Plaintiff's stated claims as they relate to the various motions to dismiss. The Court first turns to Plaintiff's takings claim, which is subject to a separate standard for ripeness than "the traditional case-and-controversy analysis" associated with Rule 12(b)(1). *Severance v. Patterson,* 566 F.3d 490, 496 (5th Cir. 2009).

2.      *The Takings Clause & ripeness*

Plaintiff claims that the enactments "violate Ash Grove's substantive due process rights because they amount to a regulatory taking." The City of Arlington and Dallas County Schools have moved to dismiss that portion of Plaintiff's case claiming that such a claim, if viable at all, is nonetheless not ripe for decision.

In this, Defendants are correct. *See Williamson County Reg'l Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 194, (1985); *Severance,* 566 F.3d at 496-500. Under *Williamson County,* "[a] takings claim is not ripe until (1) the relevant governmental unit has reached a final decision as to how the regulation will be applied to the landowner, and (2) the plaintiff has sought compensation for the alleged taking through whatever adequate procedures the state provides." *Id.* It does not matter whether the taking is styled as a regulatory taking or as condemnation of real property. *Severance,* 566 F.3d at 496.

Plaintiff has not pled that it sought compensation through state procedures nor alleged that those procedures are "unavailable or inadequate." *See Williamson County,* 473 U.S. at 197; *Severance,* 566 F.3d at 498. Ash Grove argues this is not required because it is seeking only a declaration that the enactments violate the Takings Clause. This is insufficient. The state procedural requirement is applicable to

both injunctive and declaratory relief on taking claims. *Williamson,* 473 U.S. at 195; *Severance,* 566 F.3d at 497. Accordingly, its pursuit of a regulatory takings claim in this Court is not ripe under *Williamson County* and *Severance* and should be dismissed.

The Court now turns to the issue of sovereign immunity.

### 3.        *Sovereign Immunity & Justiciability*

Dallas also raises a sovereign immunity defense and general municipal contract law to challenge the right of Ash Grove to bring suit. Doc. #26 at 1; Doc. #27 at 15-16 (*citing Catalina Dev., Inc. v. County of El Paso,* 121 S.W.3d 704, 707 (Tex. 2003); *Texas Logos, L.P. v. Texas Dep't of Transp.,* 241 S.W.3d 105, 120 (Tex. App. – Austin 2007). Dallas challenges only Plaintiff's right to bring suit based on existing contracts entered pursuant to the Dallas Resolution. This issue is rendered moot by the Court's dismissal of Ash Grove's claims against existing contracts set out in section E below.

The Court now turns to the portion of those motions claiming Plaintiff failed to allege a claim upon which relief can be granted.

### C.    **Rule 12(b)(6)**

### *1. Claims generally*

The Court has reviewed the pleadings and those attachments that are due review at this stage of litigation. Based on that review, as well as the reasons stated in the analysis of justiciability, the Court finds that Plaintiff has alleged facts that would state a claim for a violation of its substantive due process right to pursue a lawful occupation. *See generally*, Compl. However, as stated below, the Court orders Plain-

tiff to amend its complaint to clearly state its section 1983 claim based on this alle-

gation.  Other certain specific claims do not survive Rule 12(b)(6) scrutiny, as dis-

cussed below. The Court begins with Plaintiff's Equal Protection claim.

      2.     *Equal Protection*

The Equal Protection clause requires Defendants to treat all persons similar-

ly situated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985);

*Cornerstone Christian Schs v. Univ. Interscholastic League,* 563 F.3d 127, 139 (5th Cir.

2009). Equal protection analysis requires only a rational basis related to a legitimate

state interest, unless the regulation adversely impacts a suspect class or fundamen-

tal rights.  *Id.*

Plaintiff does not identify a suspect class nor does it plead fundamental

rights. The classification upon which Plaintiff builds its case is that of "wet kiln" ver-

sus "dry kiln." Plaintiff admits the proper standard of review is the "rational basis"

standard. Compl. at 47. The enactments must be given a strong presumption of va-

lidity that requires they be upheld against an equal protection challenge if any rea-

sonably conceivable facts would provide a rational basis for the classification. *City of*

*Cleburne,* 473 U.S. at 439; *Cornerstone Christian Schs,* 563 F.3d at 139.

Plaintiff bases its case on the assertion that the enactments distinguish be-

tween cement manufacturers that use dry kiln or wet kiln processes and that this

"classification has no rational relation to any legitimate governmental purpose, and

it is not grounded in fact." Compl. at 46. It claims Defendants are using "their pur-

chasing power to enact social policy." *Id.* at 3. This was succinctly stated, in the

words of one Fort Worth councilman, who said "[The] purpose of the resolution was

to use the City's purchasing power or the City's authority to buy, or not buy, a particular product in such a way that it would reduce emissions." *Id.* at 25.

While mounting a spirited case that Ash Grove does not present the NOx pollution problem Defendants think it does, *see, e.g.,* Compl. at 2-12, Plaintiff does not offer a basis for the Court to make that dispute its business under the Equal Protection Clause. Plaintiff's argument that the classification "has no rational relation to any legitimate governmental purpose" is an appeal for the Court to substitute its opinion for that of the bodies actually responsible and answerable to the electorate for legislating such enactments. *See Id.* at 47.

The Court must defer to the legislative findings expressly underlying the enactments. *See, Croft v. Governor of Tex.,* 562 F.3d at 750 ("While [courts] cannot allow a 'sham' legislative purpose, [they] should generally defer to the stated legislative intent"). Plaintiff's complaint provides that Defendants acted out of a genuinely perceived need to purchase from dry rather than wet kilns based on upon their considerations of the evidence regarding environmental benefits. *See* Doc. # 1-7 at 2; Doc. # 1-8 at 2-3; Doc. # 1-13 at 2-3; Doc # 1-23 at 2-3; Doc. # 1-26 at 2-3; Doc. # 1-27 at 4-5; *see also,* Compl. ¶ 6. Plaintiff's argument that Texas Commission on Environmental Quality disagrees with Defendants' determinations[15] likewise asks this Court to substitute a third party's policy opinion for that of those charged with actually making such decisions.

---

[15] Plaintiff asserts that the Texas Commission on Environmental Quality does not support the sort of distinctions made by Defendants in these enactments between wet and dry kilns but does not explain how this (if true) amounts to an arbitrary and capricious action by Defendants in legislating their enactments. Compl. at 47. The Court cannot at this stage judge the facts and adopt the opinion of one side or another.

Regulating the air that its citizens breathe is within the police power of municipal government. *See, e.g., Roark & Hardee,* 522 F.3d at 551. Considerations pertaining to the emission of mono-nitrogen oxides are rationally related to that concern. Beyond that, it is not the Court's business under the Equal Protection Clause whether Defendants have made the right choice in seeking to affect the levels of those emissions by these enactments.[16]

Therefore, the Court concludes that Plaintiff fails to state a claim under the Equal Protection Clause because it does not allege facts sufficient to support a claim the governmental entities have acted irrationally in enacting the resolutions.

The Court now turns to Plaintiff's claim regarding impermissible vagueness.

---

[16] Defendants' have made the public policy choice to pursue cement manufactured from dry kilns because they anticipate the public benefits achieved from this policy outweigh the additional costs to them, and indirectly their citizens, at a time when they must cut other programs, end initiatives to save disadvantaged youth from crime, suspend recreational and park services, and indeed eliminate jobs within their own workforce. *See, e.g.,* Rudolph Bush, *Services Cut, Tax Rate Holds: City Council OK's $2 Billion Plan That Spares Only Police, Fire, Code Agencies From Ax,* THE DALLAS MORNING NEWS, September 24, 2009, at 1A; *Dallas Proposed Budget Has 840 Job Cuts,* DALLAS BUSINESS JOURNAL, August 7, 2009; Mike Lee, *Fort Worth Gang Intervention Program Facing Budget Ax,* FORT WORTH STAR-TELEGRAM, June 25, 2009, at B1; Rudolph Bush, *Dallas Slashes Millions from its Budget: As Revenues Decline Sharply, City Manager Plans for Expected Shortfall,* THE DALLAS MORNING NEWS, April 19, 2009, at 1B; Susan Schrock, *Arlington Considers Reducing Services, Cutting Pay to Address Budget Shortfall,* FORT WORTH STAR TELEGRAM, June 10, 2009, at B1; Robert T. Garrett, *Pay Raises, Business Tax Cuts on Bubble as Lawmakers Work for Budget Compromise, Funding for Roads May Get Squeezed Out,* THE DALLAS MORNING NEWS, May 21, 2009, at 3A. Ash Grove alleges in some detail that there actually is no gain in air quality by simply shutting out wet kilns *per se*, as Defendants have done since passing the resolutions, rather than deciding bids with reference to well measured NOx emissions. *See* ¶¶ 45-66, 73, *see also* Compl. ¶ 50 ("The City of Fort Worth's City Manager apparently interprets the Fort Worth Resolution as allowing a preference only for dry cement despite that the preference language of the Fort Worth Resolution distinguishes on the basis of emission rates only."). These choices are all beyond the province of a federal court to offer an opinion, let alone sit in judgment on.

### 3.    Impermissible vagueness

All four movants seek to dismiss Plaintiff's claim that the enactments are void for vagueness. Plaintiff's challenge to the enactments alleging unconstitutional vagueness rests in the substantive due process clause. *See Roark & Hardee LP v. City of Austin,* 522 F.3d at 555; *Reynolds v. New Orleans City,* 272 Fed. Appx. 331, 339 (5th Cir. 2008). As such, the challenge rests on a lack of notice by which reasonable persons would know that their conduct risked subjecting them to the application of the resolutions. *Maynard v. Cartwright,* 486 U.S. 356, 361(1988). *United States v. Clark,* No. 08-10461, No. 08-10467, 2009 U.S. App. LEXIS 20247, at *15-16 (5th Cir. Sept. 10, 2009).

The facial validity of an ordinance is a question of law. *See, Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494-95 (1982); *Clark,* 2009 U.S. App. LEXIS 20247, at *6; *Ctr. for Individual Freedom v. Carmouche,* 449 F.3d 655, 662 (5th Cir. 2006) (citation omitted). The first step is an over-breadth analysis, which determines whether the ordinance reaches a "substantial amount of protected conduct." *Clark,* 2009 U.S. App. LEXIS 20247, *6 (citing *Hoffman,* 455 U.S. at 494-95). If not over-broad, the Court must then "examine the facial vagueness challenge and, if the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications." *Hoffman,* 455 U.S. at 494-95.[17] The Court finds that the resolutions do not fail as overly broad. *See Clark,* 2009 U.S.App. LEXIS 20247 at *7 (citations omitted).

---

[17] The constitutionally protected interest that might heighten review are those involving fundamental classifications, not the liberty interest protected under the due process clause. *See, e.g., Roark & Hardee,* 522 F.3d at 548. An economic regulation is invalidated only if it

Under the *Hoffman* framework, the Court now moves to the issue upon which

Plaintiff relies here, that the resolutions are impermissibly vague. *Id.* An ordinance

is vague if people of "common intelligence must necessarily guess at its meaning."

*Coates v. City of Cincinnati,* 402 U.S. 611, 614 *(1971)* ((quoting *Connally v. Gen.*

*Constr. Co.,* 269 U.S. 385, 391 *(1926)).* The Fifth Circuit has emphasized that a statute

is not unconstitutional unless "'impermissibly vague in all its applications,' including

its application to the party bringing the vagueness challenge." *Id. , at* * 7-8 (citing

*Hoffman*, 455 U.S. at 495, and *Roark & Hardee*, 522 F.3d at 546-47, 551 n.19).[18] If a

reasonable person would know his conduct was covered by the ordinance, then

there has been no failure of notice to that individual. *See, Maynard v. Cartwright,* 486

U.S. at 361.

The *Hoffman* framework therefore requires the Court to examine the actual

application of the ordinance involved in the case before engaging in speculation

about other possible complainants. *Roark & Hardee, 522 F.3d at 546* (citing *Hoffman,*

*455 U.S. at 497*). If Ash Grove was clearly covered by the resolutions, it cannot com-

plain of vagueness in how they *might* apply to others. *Id.* If constitutionally pro-

tected conduct is not threatened and the statute clearly applies to Plaintiff, it cannot

be void for vagueness. *Clark,* 2009 U.S.App. LEXIS 20247 at *9(citing *Roark & Har-*

*dee,* 522 F.3d at 547).

---

commands compliance in terms so vague and indefinite as to be no rule or standard at all,"
*Ford Motor Co. v. Tex. Dep't of Transp.,* 264 F.3d 493, 507 ( 5th Cir. 2001), or if it is "incom-
prehensible." *Id. Id. ; see also Coates,* 402 U.S. at 614; *Connally,* 269 U.S. at 391.
[18] This assumes that "no constitutionally protected conduct" is involved. *Hoffman,* 455 U.S.
at 495.

The Court finds that the vagueness claim fails under the *Hoffman* framework on the undisputed facts as alleged in the pleadings. Plaintiff, in particular, pleads itself out of any basis for a vagueness claim in this case. At great length, it pleads not only that the resolution clearly applies to Ash Grove, but also pleads that Ash Grove was essentially the specific firm targeted by the resolutions. This lies at the heart of its case under other claims.

Therefore, Plaintiff fails to state a claim for which relief may be granted based on the alleged vagueness of the enactments.  The Court now considers the bundle of purely state law claims brought by Plaintiff.

        *4.*       *Preemption/Competitive Bidding/Preferential Purchase*

Plaintiff has alleged Defendants have violated various state law claims related to competitive bidding statutes, preferential purchasing statutes, and argues the resolutions are void because they are preempted by state law. *See generally* Compl. at 36-43. Defendants seek a dismissal of these claims arguing that the Court lacks jurisdiction to hear it, Plaintiff fails to state a claim under these theories, and the Court should decline to hear these issues because they should be resolved in the state courts.

The Court has found Plaintiff has alleged a case or controversy sufficient to establish the justiciablity of its claims, other than the regulatory takings claim. However, additional information is needed to determine whether the Court should decline to decide these state law claims. Therefore, resolution of these issues will be deferred until trial unless they are disposed of earlier by summary judgment. *See*

FED. R. CIV. P. 12(i). [19]

The Court turns to whether the necessary parties are before it on the narrow, specific matter of voiding concrete contracts and prohibiting future concrete contracts made by Defendants pursuant to the resolutions.

**E.      Rule 12(b)(7): Necessary Parties**

Plaintiff seeks to void concrete contracts Dallas has made with Ash Grove's competitors since enactment of the Dallas Resolution and to prohibit any contracting until final resolution of this case. Dallas' 12(b)(7) motion is limited to certain equitable relief sought by Plaintiff in asking this Court to nullify any contracts awarded to third parties under the enactment. The City of Dallas asserts the procedural defect of a failure to name necessary parties. FED. R. CIV. P. 12(b)(7). Dallas correctly notes that Ash Grove does not identify, let alone join, any such parties, and that "[f]ederal courts consistently hold that a party to an agreement in dispute is an indispensable party under Fed.R.Civ.P. 19(a) in a suit seeking to rescind, annul, or interpret that agreement." (Quoting *Altava Health Mktg, Ltd. v. Shortgrass, Inc.,* No. Civ.A. H-04-873, 2005 WL 2277598, *9 (S.D.Tex. September 15, 2005) (Gilmore, J.) (*citing, inter alia, Enter. Mgmt. Consultants, Inc. v. United States,* 883 F.2d 890, 894 (10th Cir. 1989)).

---

[19] The Court further notes that Plaintiff alleges this is a claim under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, rather than state law. However, no diversity is alleged (nor apparent) and the Federal Declaratory Judgment Act does not confer subject matter jurisdiction independently. *Lawson v. Callahan,* 111 F.3d 403, 405 ( 5th Cir. 1997). Any further briefing on these issues should address the jurisdictional questions this raises. Additionally, Defendant DCS should definitively identify and provide legal authority for what other "relevant consideration" it has applied to its bid specifications under the cited provisions of the Education Code that allow it significant differences from the other Defendants as to bidding laws. *See,* Doc. # 21 at 17-20.

The Court is being asked to adjudicate the rights of theoretical contracting parties without their presence before it. The Court therefore concludes that this specific remedy is precluded by Plaintiff's failure to identify and join the parties to which it refers as required by Rule 12(b)(7). In an abundance of caution, and noting that discovery has not yet begun, however, the Court dismisses solely as to Plaintiff's claim for that remedy, and does so *without* prejudice. Dallas' motion is GRANTED in this regard, and the Court extends that ruling to each of the remaining Defendants *sua sponte* pursuant to its duty to police its own exercise of jurisdiction.

The Court turns now to the issue of Plaintiff's pleadings.

**F.**      **Rule 12(e)**

The City of Arlington has moved for dismissal under Rule 12(e) arguing that Plaintiff's complaint is too vague and ambiguous. *See* Doc. # 30. Alternatively, Arlington seeks an order requiring Ash Grove to re-plead and offer greater particularity. *Id.* With two exceptions, the Court does not find a fatal lack of specificity in these pleadings. Indeed, they seem quite clear and extensive.  First, the Court finds that Arlington rightly complains of a lack of notice in these pleadings as to what third-party contracts are to be voided for reasons discussed above analyzing Dallas' Rule 12(b)(7) motion. However, that issue is rendered moot by this Court's disposition of that motion.

Plaintiff's cause of action under section 1983 is the second instance in which Plaintiff's pleadings do not provide the clarity necessary for Defendants to form a proper response.  In its pleadings, Plaintiff simply states that its "constitutional rights" have been violated and that this is actionable against municipalities. Compl.

¶¶ 100-101. The allegations are little more than a paraphrase of the statute. *See,* 42 U.S.C. § 1983.

The Court's analysis of issues of standing relies on reasonable inferences drawn from the facts stated in Plaintiff's pleadings and arguments offered by Plaintiff in its briefs. *See* Compl. at 93, 101-102; Doc. #23 at 13-20; Doc. # 37 at 13-16. The Court has followed *Lujan's* admonition to presume "that general allegations embrace" specific stated facts. *Lujan v. Nat'l Wildlife Fed.,* 497 U.S. at 889.

However, for the case to continue on a disciplined, rational basis it must be well-pled, framing the issues for all future purposes, including Defendant's responses. Accordingly, the Court finds that Defendant Arlington's Motion for More Definite Statement should be granted as to the cause of action stated under 42 U.S.C. § 1983 based on the substantive due process right briefed by Plaintiff. Plaintiff is ordered to amend its pleadings to specify this cause of action under that statute together with the facts supporting the allegations no later than 5:00 p.m. October 16, 2009.

## IV.   **CONCLUSION**

Arlington's Motion for More Definite Statement (Doc. #30) is **GRANTED** insofar as it pertains to Plaintiff's claims under 42 U.S.C. § 1983 based on a violation of its substantive due process rights.

The Motion to Dismiss by Tarrant County (Doc. # 13) is **GRANTED in part** and **DENIED in part**; the Motion to Dismiss by Dallas County Schools (Doc. # 17) is **GRANTED in part** and **DENIED in part**; the Motion to Dismiss by the City of Dallas (Doc. # 26) is **GRANTED in part** and **DENIED in part**; the Motion to Dismiss by The

City of Arlington (Doc. # 30) is **GRANTED in part** and **DENIED in part**; and, the Motion for More Definite Statement by The City of Arlington (Doc. # 30) is **GRANTED in part.**

The Court is responsible for policing its own exercise of jurisdiction and must therefore apply the effects of these ruling to all parties equally. It is accepted by all parties, as apparent throughout the voluminous pleadings and appendices, that the nearly identical resolutions at the heart of this litigation render the issues uniform as to each party. Accordingly, where the Court orders dismissal of a claim against one Defendant based on its Motion, the same is done *sua sponte* as to all parties.

## V.     DISPOSITIVE RULINGS

Specifically, the **Motion to Dismiss by Tarrant County (Doc. # 13)** is **GRANTED** in part and **DENIED in part** in that:

(1) Plaintiff's claim against Tarrant County as to regulatory takings is **DISMISSED** under Rule 12(b)(1) for lack of justiciability, because it is not ripe;

(2) Plaintiff's claim against Tarrant County as to Equal Protection is **DISMISSED** for failure to state a claim upon which relief may be granted;

(3) Plaintiff's claim that Tarrant County's enactment is void for vagueness is **DISMISSED** *sua sponte* for failure to state a claim upon which relief may be granted;

(4) Plaintiff's request to void certain concrete contracts between Tarrant County and third parties rendered void through injunctive relief, and to prohibit such contracts until a final resolution in this case, is **DISMISSED**

**WITHOUT PREJUDICE** for failure to join necessary parties.

Further, the **Motion to Dismiss by Dallas County Schools (Doc. # 17) is GRANTED in part** and **DENIED in part** in that:

(1)  Plaintiff's claim against Dallas County Schools as to regulatory takings is **DISMISSED** under Rule 12(b)(1) for lack of justiciability, because it is not ripe;

(2) Plaintiff's claim against Dallas County Schools as to Equal Protection is **DISMISSED** for failure to state a claim upon which relief may be granted;

(3)  Plaintiff's claim against Dallas County Schools that DCS's enactment is void for vagueness is **DISMISSED** under Rule 12(b)(6) for failure to state a claim upon which relief may be granted;

(4) Plaintiff's request to void certain concrete contracts between DCS and third parties rendered void through injunctive relief, and to prohibit such contracts until a final resolution in this case, is **DISMISSED WITHOUT PREJUDICE** *sua sponte* for failure to join necessary parties.

The Motion to Dismiss by Dallas County Schools (Doc. #17) is **DENIED** as to all other claims by Plaintiff.

The **Motion to Dismiss by the City of Dallas (Doc. # 26)** is **GRANTED in part** and **DENIED in part** in that:

(1) Plaintiff's claim as to regulatory takings is **DISMISSED** *sua sponte* for lack of justiciability, because it is not ripe;

(2) Plaintiff's claim as to Equal Protection is **DISMISSED** *sua sponte* for failure to state a claim upon which relief may be granted;

(3) Plaintiff's claim that Dallas' enactment is void for vagueness is **DIS-MISSED** under Rule 12(b)(6) for failure to state a claim upon which relief may be granted;

(4) Plaintiff's request to void certain concrete contracts between Dallas and third parties through injunctive relief, and to prohibit such contracts until a final resolution in this case, is **DISMISSED WITHOUT PREJUDICE** under Rule 12(b)(7) for failure to join necessary parties.

The Motion to Dismiss by the City of Dallas (Doc. # 26) is **DENIED** as to all other claims by Plaintiff.

The Motion to Dismiss by The City of Arlington (Doc. # 30) is **GRANTED in part** and **DENIED** in part in that:

(1) Plaintiff's claim as to regulatory takings is **DISMISSED** under Rule 12(b)(1) for lack of justiciability, because it is not ripe;

(2) Plaintiff's claim as to Equal Protection is **DISMISSED** *sua sponte* for failure to state a claim upon which relief may be granted;

(3) Plaintiff's claim that Arlington's enactment is void for vagueness is **DIS-MISSED** under Rule 12(b)(6) for failure to state a claim upon which relief may be granted;

(4) Plaintiff's request to void certain concrete contracts between Arlington and third parties through injunctive relief, and to prohibit such contracts until a final resolution in this case, is **DISMISSED WITHOUT PREJUDICE** *sua sponte* for failure to join necessary parties.

The Motion to Dismiss by The City of Arlington (Doc. # 30) is **DENIED** as to all other

claims by Plaintiff.  As stated, Arlington's Motion for More Definite Statement (Doc. #30) is **GRANTED** insofar as it pertains to Plaintiff's claims under 42 U.S.C. § 1983 based on a violation of its substantive due process rights. Plaintiff is **ORDERED** to file a First Amended Complaint on or before October 15, 2009. Its Complaint may be amended solely as to that cause of action based on the alleged violation of substantive due process rights.

The Court extends these rulings to Defendant City of Fort Worth pursuant to its duty to police its own exercise of jurisdiction. Accordingly:

(1) Plaintiff's claim as to regulatory takings is **DISMISSED** *sua sponte* for lack of justiciability, because it is not ripe;

(2) Plaintiff's claim as to Equal Protection is **DISMISSED** *sua sponte* for failure to state a claim upon which relief may be granted;

(3) Plaintiff's claim that the Fort Worth's enactment is void for vagueness is **DISMISSED** *sua sponte* for failure to state a claim upon which relief may be granted;

(4) Plaintiff's request to void certain concrete contracts between Fort Worth and third parties through injunctive relief, and to prohibit such contracts until a final resolution in this case, is **DISMISSED WITHOUT PREJUDICE** *sua sponte* for failure to join necessary parties.

So **ORDERED** this 9th day of October, 2009.

_____

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**